## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMPLOYERS MUTUAL CASUALTY COMPANY,

      Plaintiff

vs.                                                    Case No.: 2:11-cv-13052

HELICON ASSOCIATES, INC., a Michigan              Honorable Steven J. Murphy
corporation, ESTATE OF MICHAEL J. WITUCKI,
in its capacity as successor in interest to Michael
J. Witucki, a deceased individual, JEREMY GILLIAM,
WELLS FARGO ADVANTAGE NATIONAL TAX
FREE FUND, a series of the Delaware business trust
known as the Wells Fargo Funds Trust, Delaware        **Plaintiff's Response to**
Business Trust, WELLS FARGO ADVANTAGE              **Motion to Dismiss for**
MUNICIPAL BOND FUND (in part as successor to the   **Lack of Subject Matter**
Wells Fargo Advantage National Tax-Free Fund),        **Jurisdiction**
a series of the Delaware business trust known as the
Wells Fargo Funds Trust, a Delaware business trust,
LORD, ABBETT MUNICIPAL INCOME TRUST - LORD
ABBETT HIGH YIELD MUNICIPAL BOND FUND,
a Delaware statutory trust, PIONEER MUNICIPAL HIGH
INCOME ADVANTAGE, a Massachusetts business trust,
by Pioneer Investment Management, Inc., its investment advisor,

      Defendants.

_____/

CHRISTOPHER P. JELINEK (P53543)          Richard J. Landau (P42223)
MEGAN K. CAVANAGH (P61978)             RJ LANDAU PARTNERS PLLC
Garan Lucow Miller, P.C.                      Attorney for Drew Academy
Attorney for Plaintiff                         5340 Plymouth Road, Suite 200
1000 Woodbridge                             Ann Arbor, MI 48105
Detroit, MI 48207                            (734) 865-1580
(313) 446-5554                              rjlandau@rjlps.com
cjelinek@garanlucow.com

DAVIS & CERIANI, P.C.                      KITCH DRUTCHAS WAGNER
Michael P. Cillo, Esq.                        VALITUTTI & SHERBROOK
Valeri S. Pappas, Esq.                        Michael J. Watza, Esq. (P38726)
Scott W. Wilkinson                           One Woodward Ave., Suite 2400
1350 17th Street, Suite 400                    Detroit, MI 48226-5485
Denver, Colorado 80202                       (313) 965-7986
(303) 534-9000                              mike.watza@kitch.com
mcillo@davisandceriani.com
vpappas@davisandceriani.com
swilkinson@davisandceriani.com

**PLAINTIFF EMPLOYERS MUTUAL CASUALTY COMPANY'S RESPONSE TO
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

NOW COMES, Plaintiff, EMPLOYERS MUTUAL CASUALTY COMPANY, by and

through its attorneys, GARAN LUCOW MILLER P.C., and, for the reasons stated in the

accompanying brief in support, oppose Defendants' Motion to Dismiss for Lack of Subject

Matter Jurisdiction.

Respectfully submitted,

GARAN LUCOW MILLER, P.C.

s/ Christopher P. Jelinek
CHRISTOPHER P. JELINEK (P53543)
Attorney for Plaintiff
1000 Woodbridge
Detroit, MI 48207
(313) 446-5554
cjelinek@garanlucow.com
P53543

Dated:  September 28, 2011
974439.1

2

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EMPLOYERS MUTUAL CASUALTY COMPANY,

       Plaintiff

vs.                                Case No.: 2:11-cv-13052

HELICON ASSOCIATES, INC., a Michigan     Honorable Steven J. Murphy
corporation, ESTATE OF MICHAEL J. WITUCKI,
in its capacity as successor in interest to Michael
J. Witucki, a deceased individual, JEREMY GILLIAM,
WELLS FARGO ADVANTAGE NATIONAL TAX
FREE FUND, a series of the Delaware business trust    **Brief in Support of**
known as the Wells Fargo Funds Trust, Delaware      **Plaintiff's Response to**
Business Trust, WELLS FARGO ADVANTAGE       **Motion to Dismiss for**
MUNICIPAL BOND FUND (in part as successor to the  **Lack of Subject Matter**
Wells Fargo Advantage National Tax-Free Fund),     **Jurisdiction**
a series of the Delaware business trust known as the
Wells Fargo Funds Trust, a Delaware business trust,
LORD, ABBETT MUNICIPAL INCOME TRUST - LORD
ABBETT HIGH YIELD MUNICIPAL BOND FUND,
a Delaware statutory trust, PIONEER MUNICIPAL HIGH
INCOME ADVANTAGE, a Massachusetts business trust,
by Pioneer Investment Management, Inc., its investment advisor,

       Defendants.

_____/

CHRISTOPHER P. JELINEK (P53543)         Richard J. Landau (P42223)
MEGAN K. CAVANAGH (P61978)            RJ LANDAU PARTNERS PLLC
Garan Lucow Miller, P.C.                  Attorney for Drew Academy
Attorney for Plaintiff                    5340 Plymouth Road, Suite 200
1000 Woodbridge                      Ann Arbor, MI 48105
Detroit, MI 48207                    (734) 865-1580
(313) 446-5554                      rjlandau@rjlps.com
cjelinek@garanlucow.com

DAVIS & CERIANI, P.C.               KITCH DRUTCHAS WAGNER
Michael P. Cillo, Esq.                 VALITUTTI & SHERBROOK
Valeri S. Pappas, Esq.               Michael J. Watza, Esq. (P38726)
Scott W. Wilkinson                 One Woodward Ave., Suite 2400
1350 17th Street, Suite 400           Detroit, MI 48226-5485
Denver, Colorado 80202           (313) 965-7986
(303) 534-9000                   mike.watza@kitch.com
mcillo@davisandceriani.com
vpappas@davisandceriani.com
swilkinson@davisandceriani.com

## **TABLE OF CONTENTS**

**Page**

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Concise Statement of Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Controlling or Most Appropriate Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

I.    Diversity Jurisdiction Exists Under 28 U.S.C. §1332. . . . . . . . . . . . . . . .  4

II.   This Court Should Exercise its Discretion Under 28 U.S.C.
      §2201 to Decide this Declaratory Judgment Action. . . . . . . . . . . . . . . .  10

      A.    Settlement of the Controversy. . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      B.    Clarification of the Legal Relations at Issue. . . . . . . . . . . . . . . . .  14

      C.    Race for Res Judicata. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

      D.    Increased Friction Between Federal and State
            Courts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      E.    Availability of Alternative Remedy. . . . . . . . . . . . . . . . . . . . . . . . .  17

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Certificate of Service

# INDEX OF AUTHORITIES

**Page**

## Cases

*American Bumper & Mfg Co v. Nat'l Union Fire Ins Co,*
    261 Mich.App 367; 683 NW2d 161 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Auto Club Group Ins Co v. Burchell,*
    249 Mich.App 468; 642 NW2d 406 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Bituminous Cas. Corp. v. J&L Lumber Co.,*
    373 F.3d 807 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 15, 16

*Carden v. Arkoma Assocs.,*
    494 U.S. 185; 110 S.Ct. 1015; 108 L.Ed.2d 157 (1990). . . . . . . . . . . . . . . . . 6-8

*Cosgrove v. Bartolotta,*
    150 F.3d 729 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,*
    160 F.3d 925 (2nd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*Emerald Investors Trust v. Gaunt Parsippany Partners,*
    492 F.3d 192 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-9

*General Retirement System of the City of Detroit v. UBS AG,*
    2010 WL 5296957 (E.D. Mich. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 9

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.,*
    746 F.2d 323 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Grede v. Bank of N.Y. Mellon,*
    598 F.3d 899 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*Homfeld II, L.L.C. v. Comair Holdings, Inc.,*
    53 Fed. Appx. 731 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 8, 9

*Johnson v. Columbia Properties Anchorage, LP,*
    437 F.3d 894 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*JP Morgan Chase Bank v. Century Truss,*
    2010 WL 2556867 (E.D. Mich. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Mullins v. TestAmerica, Inc.,*
    564 F.3d 386 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458; 100 S.Ct. 1779; 64 L.Ed.2d 425 (1980). . . . . . . . . . . . . . . . . . 5-9

*Northland Ins. Co. v. Stewart Title Guar. Co.*,
    327 F.3d 448 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Riley v. Merrill Lynch*,
    292 F.3d 1334 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
    78 F3.d 1125 (6th Cir.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14-17

*State Farm Fire & Cas. Co. v. Odom*,
    799 F.2d 247 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Strawbridge v. Curtiss,*
    7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wilton v. Seven Falls Co.*,
    515 U.S. 277; 115 S.Ct. 2137; 132 L.Ed.2d 214 (1995). . . . . . . . . . . . . . . 10, 15


**Statutes / Court Rules / Other Authorities**

28 U.S.C. § 1332(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 2, 4, 9, 10

28 U.S.C. §1332(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 2, 10

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

I.     Whether diversity jurisdiction exists in the instant declaratory judgment action pursuant to 28 U.S.C. §1332.

II.    Whether this Court should exercise jurisdiction in this matter pursuant to 28 U.S.C. §2201.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (2002)

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458; 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980)

*Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 554 (6th Cir. 2008)

## **FACTUAL BACKGROUND**

Employers Mutual Casualty Company (EMC) initiated this action seeking a declaration of the rights and responsibilities of the parties under four policies of insurance issued by EMC to Defendant, Helicon Associates, Inc. ("Helicon")[1]  The basis for the instant action arose by virtue of two separate actions seeking to impose liability on Helicon and others relating to the issuance of municipal bonds by two Michigan charter schools. The first action was filed by Wells Fargo Advantage National Tax Free Fund, Wells Fargo Advantage Municipal bond Fund, Lord, Abbett Municipal Income Trust - Lord Abbett High Yield Municipal Bond Fund, and Pioneer Municipal High Income Advantage (collectively "the Trusts") on December 15, 2008 in this Court (Docket No. 08-15162).  The second action was filed on November 10, 2009 by the Dr. Charles Drew Academy (the "Academy") in the Wayne County Circuit Court (Docket No. 09-017576-NM).   In these actions, the Trusts and the Academy seek to impose liability on, *inter alia,* Helicon, the Estate of Michael J. Witucki (as former President and owner of Helicon), and Jeremy Gilliam.  EMC initiated the instant action against Helicon, the Estate of Witucki, Gilliam, the Trusts and the Academy on July 14, 2011 and allege that there exists no indemnity coverage under

---

[1]These policies include:   (1) the Linebacker Public Officials and Employment Practices Liability Policy No. 1K3-93-27 issued by EMC to Helicon for the original Period of Insurance of December 16, 2007 to December 16, 2008 (the "07/08 Linebacker Policy"); (2) the Commercial Liability Umbrella Policy No. 1M3-93-27 issued by EMC to Helicon for the original Period of Insurance of December 16, 2007 to December 16, 2008 (the "07/08 Umbrella Policy"); (3) the Linebacker Public Officials and Employment Practices Liability Policy No. 1K3-93-27 issued by EMC to Helicon for the original Period of Insurance of December 16, 2008 to December 16, 2009 (the "08/09 Linebacker Policy"); and (4) the Commercial Liability Umbrella Policy No. 1M3-93-27 issued by EMC to Helicon for the original Period of Insurance of December 16, 2008 to December 16, 2009 (the "08/09 Umbrella Policy").

the insurance policies for the liability alleged against Helicon, the Estate of Witucki or Gilliam by the Trusts and the Academy in the underlying actions.

In their underlying action, the Trusts alleged that, in addition to federal question jurisdiction, this Court possessed diversity jurisdiction over the controversy, alleging that they were Massachusetts and Delaware business trusts with principal places of business in California, New Jersey and Massachusetts, and that complete diversity of citizenship exists.  (R.1, ¶¶ 1, 10-13, Docket 08-15162) Likewise, EMC initiated this action, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 and under the Declaratory Judgment Act, 28 U.S.C. § 2201, mirroring the Trusts' allegations with respect to their principal places of business.

In an attempt to avoid EMC's asserted coverage exclusions, and in an attempt to divest this Court of subject matter jurisdiction (of both their underlying claims against Helicon as well as this declaratory judgment action), the Trusts have recently filed an amended complaint in their underlying action in which they do the following: (1) remove their original allegation of diversity jurisdiction, (2) drop their federal claims against Helicon, Witucki and Gilliam, (3) attempt to remove all allegations and claims of fraud and instead allege that Helicon, Witucki and Gilliam, acted merely negligently, and (4) amend their allegations to reflect that, rather than Lord, Abbett Municipal Income Trust, the proper party is Lord, Abbett Municipal Income Fund, Inc., a Maryland corporation with its principal place of business in New Jersey.

Consistent with their efforts to divest this Court of jurisdiction over its claims in the underlying action, the Trusts now seek to dismiss this declaratory judgment action, arguing that the Wells Fargo Funds Trust is a citizen of Iowa by virtue of the fact that at least one

2

shareholder resides in Iowa[2] and, given that EMC is also a resident of Iowa, complete diversity is lacking.  For the reasons discussed below, it is EMC's position that diversity jurisdiction does exist under precedent of the Sixth Circuit and the United States Supreme Court and that the Trusts' reliance on non-controlling Third Circuit case authority is misplaced.

EMC requests that this Honorable Court deny the Trusts' motion to dismiss the complaint based on lack of subject matter jurisdiction.  Recognizing that the existing pleading does not properly plead the citizenship of the Trusts because it does not allege the citizenship of the Trusts' trustees, if the pending motion is denied, EMC will file an amended pleading correcting this error.[3]

## **LEGAL STANDARD**

The diversity statute vests the court with jurisdiction over suits between citizens of different States and over suits between citizens of different States in which citizens of a foreign state are additional parties. 28 U.S.C. § 1332(a)(1) & (3). Diversity must be complete between all of the plaintiffs and all of the defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).  It is the plaintiff's burden to demonstrate that the court has jurisdiction over the subject matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F3.d 1125, 1134 (6th Cir.1986) (citation omitted).

---

[2]Indeed, the Trusts have represented in their underlying action against Helicon that they "believe they have beneficiaries in every state."  (R.180, Stipulated and Unopposed Order Granting Plaintiffs Leave to File First Supplemental and Amended Complaint, page 2 of 4).

[3]In addition, in light of the Trusts' amended complaint in the underlying action, EMC will also correct the pleading to reflect Lord, Abbett Municipal Income Fund, Inc. as a proper party.

## ARGUMENT

### I.   DIVERSITY JURISDICTION EXISTS UNDER 28 U.S.C. §1332.

In support of it's motion to dismiss, Wells Fargo argues that, because one of the shareholders of Wells Fargo Advantage Municipal Bond Fund resides in Iowa,[4] complete diversity is lacking and this case should be dismissed.  Wells Fargo's argument is based upon a non-binding decision out of the Third Circuit, *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3rd Cir. 2007), and Wells Fargo's assumption that, in this Circuit, the citizenship of a trust is determined by the citizenship of the trust's trustee(s) and beneficiaries.

As discussed in more detail below, it is EMC's position that, in the Sixth Circuit, the citizenship of a trust is determined by the citizenship of the trust's trustee(s) and that the citizenship of a trust's beneficiaries cannot be asserted to defeat diversity jurisdiction. Upon information and believe, none of the trustees of the Wells Fargo Funds Trust or the Pioneer Municipal High Income Advantage Trust are citizens of Iowa and, therefore complete diversity exists.[5]   Specifically, it is EMC's belief that the trustees of the Wells

---

[4]Indeed, the Defendants have represented in their underlying action against Helicon that they "believe they have beneficiaries in every state."  (R.180, Stipulated and Unopposed Order Granting Plaintiffs Leave to File First Supplemental and Amended Complaint, page 2 of 4).  To accept Wells Fargo's positions in these actions, Wells Fargo is not subject to *any* federal court's diversity jurisdiction as no plaintiff could ever establish complete diversity of citizenship.

[5]While the Complaint in this matter alleges that Defendant, Lord Abbett Municipal Income Trust, is a Delaware business trust, this Defendant has since amended its complaint in its underlying action against EMC's insureds so as to reflect that the proper party is Lord, Abbett Municipal Income Fund, Inc., a Maryland corporation with its principal place of business in New Jersey. Accordingly, this party is clearly diverse from EMC and the arguments regarding the citizenship of a business trust advanced in the instant motion are applicable only to Wells Fargo Funds Trust and Pioneer Municipal High Income Advantage Trust, and not Lord, Abbett Municipal Income Fund, Inc.

4

Fargo Funds Trust include the following: Peter G. Gordon (believed to be a resident of California), Isaiah Harris, Jr. (believed to be a resident of Pennsylvania), Judith M. Johnson (believed to be a resident of Massachusetts), Leroy Keith, Jr. (believed to be a resident of Alabama), David F. Larker (believed to be a resident of California), Olivia S. Mitchell (believed to be a resident of Pennsylvania), Timothy J. Penny (believed to be a resident of Minnesota), Michael S. Scofield (believed to be a resident of North Carolina), and Donald C. Willeke (believed to be a resident of Minnesota).  It is EMC's belief that the trustees of Pioneer Municipal High Income Advantage Trust include the following: John F. Cogan, Jr. (believed to be a resident of Massachusetts), Daniel K. Kingsbury (believed to be a resident of Massachusetts), David R. Bock (believed to be a resident of Washington D.C.), Mary K. Bush (believed to be a resident of Maryland), Benjamin M. Friedman (believed to be a resident of Massachusetts), Margaret B.W. Graham (believed to be a resident of Massachusetts), Thomas J. Perna (believed to be a resident of New York), Marguerite A. Piret (believed to be a resident of Massachusetts), and Stephen K. West (believed to be a resident of New York).

Wells Fargo's argument that the citizenship of its beneficiaries defeats diversity jurisdiction in this action is misplaced for a number of reasons.  First, the Sixth Circuit has never adopted the reasoning of the Third Circuit in *Emerald, supra*.  In contrast, the Sixth Circuit has held that a business trust has the citizenship of its trustees.  *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (2002), citing *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) and *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458; 100 S.Ct. 1779; 64 L.Ed.2d 425 (1980).  In addition to the Sixth Circuit, four other circuit courts of

appeal - the Second,[6] Fifth,[7] Seventh[8] and Ninth[9] - also hold that a business trust has the citizenship of its trustee(s).  The reasoning for this conclusion is nearly universal - members of a trust, in contrast to members of limited liability partnerships and limited liability companies, have an equitable ownership only, and they lack the ability to make decisions for the trust.  *General Retirement System of the City of Detroit v. UBS AG*, 2010 WL 5296957 (E.D. Mich. 2010) [attached as Exhibit 1].

Moreover, a number of these other circuits have specifically rejected the Third Circuit's analysis in *Emerald, supra* as flawed.  The Third Circuit's decision in *Emerald* is based upon its interpretation of two decisions by the United States Supreme Court: *Navarro, supra* and *Carden v. Arkoma Assocs.*, 494 U.S. 185; 110 S.Ct. 1015; 108 L.Ed.2d 157 (1990).  In *Navarro*, the issue before the Court was whether diversity jurisdiction existed over a suit brought by a trustee of a business trust, when one of the beneficiaries of that business trust was the same citizenship as the defendant.  The Fifth Circuit had concluded that the business trust should be treated as a trust, and that citizenship for purposes of diversity jurisdiction should be that of the real parties in interest - i.e., the trustees.  The Supreme Court framed the question:  "Fidelity is an express trust, and the question is whether its trustees are real parties to the controversy for purposes of a federal court's diversity jurisdiction."  *Navarro*, 446 U.S. at 462.  The *Navarro* Court noted that, since 1808, trustees of an express trust were entitled to bring diversity actions in their own

---

[6]*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2nd Cir. 1998).

[7]*Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 397 n. 6 (5th Cir. 2009).

[8]*Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 901 (7th Cir. 2010).

[9]*Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006).

names and based on their own citizenship and that, since 1870, the Court had held that diversity jurisdiction of individual trustees was not "defeated by the fact that the parties whom they represent may be disqualified." *Navarro*, 446 U.S. at 463. Finally, the Court also noted that the result would not be different even where the trust beneficiaries were numerous and widely scattered, so long as the trustee had legal title to trust assets and had the customary authority to hold, manage and dispose of assets for the benefits of others. *Navarro*, 446 U.S. at 463-464. Accordingly, the *Navarro* Court reasoned, so long as the trustee's powers are both customary, real and substantial, the trustees are not "mere conduits" but, rather, real parties to the controversy which may be maintained in diversity jurisdiction "without regard to the citizenship of the trust beneficiaries." *Navarro*, 446 U.S. at 465-466.[10]

In *Emerald*, the Third Circuit reasoned that Navarro was subsequently overruled by *Carden, supra*. This reasoning is flawed. In *Carden*, the Supreme Court addressed the question of whether the citizenship of the limited partners must be taken into account in determining the existence of diversity jurisdiction where the party is a limited partnership. Accordingly, because this was the only issue in *Carden*, anything the opinion might have had to say about diversity jurisdiction involving trusts was, at best, dictum. The *Emerald* Court placed undue significance on Justice Scalia's general observation that a corporation is the only artificial entity that has its own citizenship, and that for all other artificial entities, the citizenship of the members must also be considered. *Carden*, 494 U.S. at 191-193.

---

[10]In his lone dissent in *Navarro,* Justice Blackmun concluded that business trusts should be treated as unincorporated associations, for which the real parties in interest are the members. However, Justice Blackmun did not disagree that, if business trusts are to be treated as trusts, rather than business associations, the real party in interest is the trustee.

In the course of rejecting the plaintiff's argument that there was more than one exception to that general principle, because *Navarro* had held that a trust had the citizenship of its trustee, Justice Scalia explained that *Navarro* did not hold that "the trust had attributes making it a 'citizen.'" Instead of holding that a trust has any citizenship, Justice Scalia explained, *Navarro* simply applied the rule "more than 150 years old," that "a trustee is a real party to the controversy," so his citizenship is determinative. *Id.*

In deciding that the *Carden* dictum had some implication on diversity jurisdiction in cases involving trusts, the *Emerald* Court focused on the fact that the suit in *Navarro* was brought in the name of the trustees, rather than in the name of the trust itself. *Emerald, supra* at 200-201. However, nothing in *Navarro* or *Carden* suggests that the name of the party is controlling. The fact that the trust itself is a named party does not change the 150 years of Supreme Court precedent concluding that for real, express trusts, the trustee, rather than the beneficiaries, is the real party in interest on whose citizenship the existence of diversity jurisdiction turns. Even after *Carden, supra*, the Second, Fifth, Sixth, Seventh and Ninth Circuits have held that *Navarro* is still good law and that the trustee's citizenship is determinative for diversity jurisdiction involving a trust.[11] The Third Circuit's decision in *Emerald* is a misreading of *Navarro* and also Justice Scalia's dictum in *Carden*.

As recently noted by Judge Steeh, while recognizing that a minority of federal courts have adopted the dual trustee-beneficiary rule for purposes of determining citizenship of a trust:

---

[11]See *E.R. Squibb & Sons, supra* (2nd Cir. 1998); *Mullins, supra* (5th Cir. 2009); *Homfeld II, supra* (6th Cir. 2002); *Grede, supra* (7th Cir. 2010); and *Johnson, supra* (9th Cir. 2006). In contrast, the Eleventh Circuit, *Riley v. Merrill Lynch*, 292 F.3d 1334, 1339 (11th Cir. 2002), holds that the citizenship of a trust is determined by the citizenship of its beneficiaries.

8

> This court favors the reasoning of the majority of the Circuit Courts of Appeal, including the Sixth Circuit, and the Supreme Court in *Navarro*, that regardless of who the named plaintiff is, the trustee is the one with the authority to hold, manage and dispose of assets, as well as make decisions on behalf of the trust, and is therefore the real party to the action.  As such, when considering whether diversity jurisdiction exists, the citizenship of the trust should be determined by the citizenship of its trustee or trustees only.

*General Retirement Systems of the City of Detroit, supra* at *4.

While EMC is aware of this Court's decision in *JP Morgan Chase Bank v. Century Truss*, 2010 WL 2556867 (E.D. Mich. 2010), citing *Emerald, supra*, for the proposition that the citizenship of a trust is that of its trustee and beneficiaries, EMC notes that the plaintiff in that action did not address the issue raised in the instant motion - i.e., whether, in this jurisdiction, the citizenship of a trust is determined by the citizenship of the trustee, nor did the plaintiff offer any analysis of the controlling case authority discussed above.  Instead, the plaintiff merely alleged that the trusts at issue had business addresses in the State of Michigan.  Regardless of whether *Emerald* or *Navarro* and *Homfeld II* control, the plaintiff in that action failed to adequately plead the requisite diversity of citizenship.

Based on the foregoing analysis, it is respectfully submitted that the Third Circuit's analysis in *Emerald* is neither controlling nor persuasive and that, under precedent of the Sixth Circuit and the United States Supreme Court, the citizenship of the defendant Trusts is controlled by the citizenship of its trustees, regardless of whether the Trusts have a beneficiary in every state in the country, including Iowa.  Based upon information and belief, none of the Trusts' trustees are citizens of Iowa, the trustees hold legal title to the Trusts' assets, and have customary, real and substantial powers with respect to the Trusts.  Therefore, complete diversity exists and jurisdiction is proper under 28 U.S.C. §1332.

II.   **THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER 28 U.S.C. §2201 TO DECIDE THIS DECLARATORY JUDGMENT ACTION.**

In addition to alleging diversity jurisdiction pursuant to 28 U.S.C. §1332, EMC has alleged jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §2201.  Recognizing that the question of this Court's jurisdiction over the instant action necessarily involves an analysis of whether this Court should exercise its discretionary jurisdiction under the Declaratory Judgment Act, EMC addresses this issue herein.[12]  It is EMC's position that this Court should exercise jurisdiction in this declaratory action.

28 U.S.C. §2201 provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Pursuant to the Act, a district court is authorized, in the sound exercise of its discretion, to exercise jurisdiction "because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are particularly within [its] grasp."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289; 115 S.Ct. 2137; 132 L.Ed.2d 214 (1995).  The Sixth Circuit Court of Appeals has identified five factors as relevant to the question of whether a district court should exercise jurisdiction in a declaratory judgment action:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

---

[12]The Defendant Academy has recently filed a motion seeking to dismiss this action, arguing that this Court should not exercise its jurisdiction under 28 U.S.C. §2201.  EMC will timely respond to same motion with respect to the issues specific to the Academy's underlying claims.

10

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 554 (6th Cir. 2008), citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

Applying these factors to the instant case demonstrates that this Court should exercise jurisdiction in this declaratory action.

### A.    Settlement of the Controversy.

The first factor to consider is whether the federal court's judgment in the declaratory judgment action would settle the controversy.  The Sixth Circuit has issued two lines of authority on this issue, with one set of cases focusing on whether the declaratory action will settle the insurance coverage dispute, and a second line of cases focusing on whether the declaratory action will settle the underlying litigation.  *Flowers, supra* at 554-555. However, these two lines of cases can by synthesized by considering whether the declaratory judgment action would resolve the insurance dispute without unnecessarily duplicating the proceedings or considering an issue that has been, or will be, considered by the court in the underlying action.  If resolution of the underlying tort action would resolve the coverage dispute then the state court is the better forum.  However, if resolution of the tort action would leave the insurance coverage action unresolved, the federal forum is appropriate.  In other words, if the insurance coverage determination rests on a fact-based question of state law which will necessarily be decided by the court in the underlying action, then resolution of that issue in the tort action would resolve the coverage

11

action, and jurisdiction in the federal court would not be warranted. However, where resolution of the coverage action does not turn on a factual issue disputed in the underlying action - and therefore would leave the coverage action unresolved - the federal court's exercise of jurisdiction in the declaratory action would settle the controversy and jurisdiction in the federal court would be appropriate. *Id* at 554-555.

For example, in *Flowers,* the determinative issue in the coverage action was the legal question of whether the defendant was considered an insured under the policy of insurance, whereas the issue in the underlying tort action was whether the defendant was acting within the scope of his employment. Resolution of whether or not the defendant was acting within the scope of his employment would not have resolved the insurance coverage issue and, hence the *Flowers* Court held that this factor weighed in favor of the district court's exercise of jurisdiction in the coverage action. In contrast, in *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004), resolution of an issue in the tort action (i.e., whether the injured party was an employee) necessarily resolved the coverage action because the injured party's employment status was determinative of coverage under the insurance policy at issue (i.e., whether the plaintiff's claim was a worker's compensation claim for which there was no coverage).

As in *Flowers*, and in contrast to *Bituminous*, resolution of the underlying factual issues in Wells Fargo's tort action will not resolve the coverage dispute at issue in this declaratory action. At issue in the tort action is whether Helicon/Witucki's conduct violated the securities statutes of Michigan, Connecticut and Massachusetts and whether Helicon/Witucki negligently misrepresented facts in the Official Statement, upon which Wells Fargo allegedly relied to their detriment in purchasing the bonds. However, the issues to be resolved in this insurance coverage action are legal issues of contractual

12

interpretation:[13] (1) whether Helicon/Witucki's actions were based upon or attributable to Helicon and/or Witucki gaining any personal profit or advantage to which they were not entitled; (2) whether Helicon/Witucki's actions constituted fraud or dishonesty; (3) whether Helicon/Witucki's actions were intentionally illegal; (4) whether Helicon/Witucki's acts involved Helicon's and/or Witucki's failure, refusal or inability to perform any contract or agreement; (5) whether Helicon and/or Witucki's acts were in connection with guarantees on bond issues.[14] In addition, EMC seeks a legal determination that Jeremy Gilliam is not an insured under the insurance policies because he was, at best, an independent contractor of Helicon.  Gilliam's employment relationship with Helicon is not at issue in the underlying tort suit and, hence, can only be resolved in the coverage action.

Resolution of the underlying fact issues will not resolve the coverage determination - indeed, it is clear from Wells Fargo's recent amendment to their complaint in the underlying action that they will be pursuing negligence theories and specifically avoiding litigation of issues relating to coverage - i.e. fraud and Witucki's intent in committing the alleged wrongful acts.[15]   Considering that EMC is not a party to the underlying action and the

---

[13]The determination whether an insurer is contractually obligated under its policy to defend certain claims is a question of law requiring interpretation of the insurance contract. *American Bumper & Mfg Co v. Nat'l Union Fire Ins Co,* 261 Mich.App 367, 375; 683 NW2d 161 (2004).

[14]Issues (1) - (3) relate to "absolute exclusions" under the insurance policies while issues (4) - (5) are "limited defense exclusions."

[15]However, a finding of negligence in tort is not dispositive of whether the insured did not act intentionally for purposes of insurance coverage. The inquiry in determining whether there is insurance coverage is separate. It is possible for a negligent tortious act to be considered intentional for insurance coverage purposes. In determining whether an insurer has a duty to defend, the court must look beyond the mere nomenclature of the claim to the substance of the underlying tort. *Auto Club Group Ins Co v. Burchell,* 249 Mich.App 468, 481; 642 NW2d 406 (2002). An insured cannot avoid the policy implications of an intentional act simply because a complaint refers to negligence. *Id.* at 483.

13

determinative coverage issues will not be resolved (indeed litigated) in the underlying tort action, a judgment from this Court in the coverage action would settle the controversy. Accordingly, consideration of this first factor weighs in favor of this Court exercising jurisdiction.

**B.      Clarification of the Legal Relations at Issue.**

The issue of whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue, mirrors the first factor. *Flowers, supra* at 557. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* In the instant action, this Court's judgment in the coverage action will clarify the legal relationship between EMC and the defendants by setting parameters with respect to EMC's duty to defend and/or indemnify Helicon, Witucki and Gilliam for the liability alleged against them by Wells Fargo and the other defendants. Moreover, judgment in this coverage action will clarify the legal relationship in a way that the underlying action cannot, considering that EMC is not a party to that action. Accordingly, this factor also weighs in favor of this Court accepting jurisdiction.

**C.      Race for Res Judicata.**

The third factor considers whether the declaratory action was filed merely for the purpose of "procedural fencing" or "to provide an arena for res judicata." *Flowers, supra* at 558. When the declaratory action is filed before the underlying action is filed, the concern arises that the declaratory plaintiff is attempting to beat the original plaintiff to the courthouse and find a more favorable forum. *Id.* However, "when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action." *Id.*, citing

14

*Bituminous, supra* at 814.  A declaratory plaintiff is entitled to "choose the jurisdiction of federal rather than state court, a choice given by Congress," and that choice alone is "no evidence" of procedural fencing.  *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986).

In the instant action, there simply can be no serious contention that EMC is attempting to engage in procedural fencing by filing this action in this Court considering that this coverage action was not filed until after Wells Fargo first filed its own action in this Court.  The fact that Wells Fargo has subsequently attempted to avoid this Court's jurisdiction by amending its complaint does not alter this analysis.  Accordingly, this factor also weighs in favor of jurisdiction in this Court.

### D.    Increased Friction Between Federal and State Courts.

The fourth factor asks this Court to consider whether accepting jurisdiction over this coverage action would increase friction between federal and state courts:

> The Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed."

*Flowers, supra* at 559, quoting *Wilton,* 515 U.S. at 283.  The Sixth Circuit has identified three sub-factors to consider in evaluating this factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case;

> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

> (3) whether there is a close nexus underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

15

*Flowers, supra* at 560, citing *Bituminous, supra* at 814-815.

The first sub-factor focuses on whether the liability issues being determined in the underlying tort action are legally or factually distinct from the issues of policy interpretation central to the coverage action. *Id*. In the instant action, as discussed above, resolution of Helicon and Witucki's liability to Wells Fargo will involve resolution of both legal and factual issues which are separate and distinct from issues central to the coverage action.

The second sub-factor focuses on whether the federal or state court is better positioned to resolve the determinative issues in the coverage action. When state law is clear, a federal court is more than capable of applying state law to the issues before it. *Flowers, supra* at 560. Moreover, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court, a decision by the district court on these issues would not offend principles of comity.'" *Id.,* quoting *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). In the instant case, although Michigan law will apply to this coverage action, Michigan law governing contract interpretation is clear, the questions of state law are not particularly novel or complex, and this Court is more than capable of resolving the contract interpretation issues presented in this action.

The final sub-factor asks whether the coverage action implicates important state policies which should be addressed by the state court rather than the federal court. *Flowers, supra* at 561. While interpretation of a Michigan insurance contract may, in the most general sense, implicate Michigan public policy, Michigan appellate courts have provided clear guidance for this Court to follow in interpreting the policy provisions at issue here. Accordingly, this fourth factor weighs in favor of this Court exercising jurisdiction over this coverage action.

16

E.      **Availability of Alternative Remedy.**

The final factor asks whether there is an alternative remedy to the federal coverage action which is better or more effective. *Flowers, supra* at 561. An indemnity action is not a viable alternative, considering that EMC would have to wait until liability is resolved in the underlying action before it could seek a determination of its contractual obligation to Helicon, Witucki and Gilliam. *Id*. While alternative remedies, such as filing an action in state court or intervening in the underlying tort action, may exist, they are not necessarily better or more effective at resolving the coverage action. Given the clarity from Michigan appellate courts regarding principles governing contract interpretation, this Court is no less capable than a Michigan court of resolving the insurance coverage issues in this action. Moreover, with respect to Wells Fargo and the other Trust defendants, the underlying action remains pending (for the time being at least) in this Court - there is no state court action involving these defendants in which EMC could intervene. Accordingly, this factor weighs in favor of maintaining this action in this federal forum.

**CONCLUSION**

For these reasons, it is EMC's position that jurisdiction in the instant declaratory judgment act exists in this Court. EMC requests that this Honorable Court deny the Trusts' motion to dismiss the complaint based on lack of subject matter jurisdiction. Recognizing that the existing pleading does not properly plead the citizenship of the Trusts because it does not allege the citizenship of the Trusts' trustees, if the pending motion is denied, EMC will file an amended pleading correcting this error.

Respectfully submitted,

GARAN LUCOW MILLER, P.C.

s/ Christopher P. Jelinek
CHRISTOPHER P. JELINEK (P53543)
Attorney for Plaintiff
1000 Woodbridge
Detroit, MI 48207
(313) 446-5554
cjelinek@garanlucow.com
P53543

Dated: September 28, 2011
974439.1

18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2011, my assistant, Susan M. Westphal, electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Richard J. Landau, Esq.     rjlandau@rjlps.com

Michael P. Cillo, Esq.        mcillo@davisandceriani.com

and I hereby certify that on September 28, 2011, my assistant, Susan M. Westphal, mailed by United States Postal Service the foregoing document to the following non-ECF participants, with full legal postage prepaid thereon and deposited in the United States mail:

Michael J. Watza, Esq. (P38726)
Kitch Drutchas Wagner Valitutti & Sherbrook
One Woodward Ave., Suite 2400
Detroit, MI 48226-5485

s/ Christopher P. Jelinek
CHRISTOPHER P. JELINEK (P53543)
Attorney for Plaintiff
1000 Woodbridge
Detroit, MI 48207
(313) 446-5554
cjelinek@garanlucow.com
P53543

974439.1