UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMPLOYERS MUTUAL CASUALTY
COMPANY,

    Plaintiff,

v.

HELICON ASSOCIATES, INC., et al.,

    Defendants.
                                        /

Case No. 11-cv-13052

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING FUND DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION** (docket no. 10)

Employers' Mutual Casualty Company ("EMCC") is an Iowa corporation with its principal place of business in Des Moines, Iowa. It is the liability insurer for Helicon Associates ("Helicon"), the Michigan corporation that operated the Dr. Charles Drew Academy charter school in Ecorse, Michigan. Helicon is currently embroiled in a securities case filed by several mutual funds that purchased tax-free bonds issued by Helicon, only to watch the school lose its state charter. *See Wells Fargo Advantage National Tax Free Fund v. Helicon Associates, Inc.*, No. 08-cv-15162. EMCC filed this declaratory judgment action, pursuant to 28 U.S.C. § 2201 and Civil Rule 57, in order to clarify its indemnification obligations. The complaint names as defendants all remaining parties in the *Wells Fargo* case.[1]

---

[1] The defendants are: Helicon Associates, Inc.; the Estate of Michael J. Witucki; the Dr. Charles Drew Academy; Jeremy Gilliam; Wells Fargo Advantage National Tax Free Fund; Wells Fargo Advantage Municipal Bond Fund; Lord, Abbett Municipal Income Trust; Lord Abbett High Yield Municipal Bond Fund; and Pioneer Municipal High Income Advantage Trust.

The mutual funds named in the complaint ("Fund Defendants") filed a motion to dismiss for lack of subject matter jurisdiction on September 7, 2011. All of the Fund Defendants are organized as business trusts under either Delaware or Massachusetts law. One of the beneficial shareholders of the Wells Fargo Advantage National Tax Free Fund is, like EMCC, an Iowa citizen. Southwell Aff. ¶ 6, ECF No. 10-1. The Fund Defendants argue that this commonality is sufficient to defeat diversity jurisdiction and dispose of the case. EMCC argues that only the trustees of a business trust are relevant for the purpose of ascertaining jurisdiction. The jurisdictional dispute raised by the parties has not been conclusively settled by either the Supreme Court or the Sixth Circuit. After a review of the relevant precedents from the Supreme Court and other federal courts, this Court concludes that the Fund Defendants have the better of the argument. Accordingly, the Court will grant the motion and dismiss this case, without prejudice.[2]

## STANDARD OF REVIEW

The Fund Defendants filed a Civil Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. EMCC bears the burden of showing that jurisdiction exists. *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011). Consideration of materials outside the pleadings is permissible. *Id.* In this motion, the parties do not dispute the material jurisdictional facts. Therefore, the Court's task is strictly one of legal analysis.

## DISCUSSION

I.   Complete Diversity and Unincorporated Organizations

A declaratory judgment action must have an independent jurisdictional basis. *Heydon v. MediaOne of S.E. Mich.*, 327 F.3d 466, 470 (6th Cir. 2003) (holding that "the court must have jurisdiction already" before it can hear a declaratory judgment case). EMCC claims

---

[2] The Court held a hearing on the motion On January 26, 2012.

the Court has diversity jurisdiction over this matter. *See* 28 U.S.C. § 1332(a) (giving district courts jurisdiction over all suits with a matter in controversy in excess of $75,000 between "citizens of different States"). But diversity jurisdiction requires complete diversity, meaning no plaintiff may share a defendant's citizenship. *U.S. Motors v. Gen. Motors Eur.* 551 F.3d 420, 423 (6th Cir. 2008); *accord Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267–68 (1806). It is often difficult to obtain diversity jurisdiction over a large, unincorporated entity because it has "the citizenship of each partner or member." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). The exact meaning of that rule as applied to a business trust is the disputed issue in this motion.

The Fund Defendants argue that their citizenship for diversity purposes is determined by the citizenship of their trustees *and* their shareholders. But imposing such a rule in this case would be fatal to EMCC's assertion of diversity jurisdiction. The Wells Fargo fund has at least one beneficiary with an Iowa citizenship, and EMCC is an Iowa corporation with its principal place of business in Iowa. EMCC responds that only the trustees of a business trust should be considered for diversity purposes, and the parties agree that no Fund Defendant has a trustee who is a citizen of Iowa, so if EMCC is correct, the suit may proceed in federal court.

The parties' disagreement is reflected in a three-way circuit split on the treatment of business trusts for diversity jurisdiction purposes. *Compare Emerald Investors Trust v. Gaunt Parisppany Partners* [hereinafter *Emerald*], 492 F.3d 192, 203 (3d Cir. 2007) (citizenship of trustees and beneficiaries) *with Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998) (citizenship of trustees) *and Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1338 (11th Cir. 2002) (citizenship of beneficiaries). The Sixth Circuit has not weighed in on the split in a published opinion. It did side with the majority

3

of circuits that determine a trust's citizenship by reference to the citizenship of the trustees alone in an unpublished opinion. *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002). This lack of consensus stems from two Supreme Court cases that address the citizenship of business trusts but do not squarely resolve the issue presented by the current motion. *See Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990); *Navarro Sav. Assoc. v. Lee*, 446 U.S. 458 (1980).

The Court begins by canvassing the two principal Supreme Court cases, *Navarro* and *Carden*. It will then review the treatment of business trusts by the various circuits. The Court concludes that the "beneficiaries and trustees" approach to determining citizenship best reflects the Supreme Court's decisions in this area.

II. <u>Supreme Court Opinions on the Citizenship of Business Trusts</u>

   A. <u>*Navarro Savings Association v. Lee*</u>

The respondents in *Navarro* were the individual trustees of Fidelity Mortgage Investors ("Fidelity"), a Massachusetts business trust. *Navarro*, 446 U.S. at 458. They brought suit in their own names in federal district court in Texas against the Navarro Savings Association ("Navarro") after Navarro allegedly breached an agreement to lend money to Fidelity. *Id.* Navarro was a Texas corporation with its principal place of business in Texas, and Fidelity's trustees were all citizens of other states. *Id.* at 459. Nonetheless, Navarro moved to dismiss the case for lack of subject matter jurisdiction because some of Fidelity's beneficial shareholders were Texas citizens, and those shareholders were the "real parties in interest" to the dispute. *Id.* at 460. The district court agreed with Navarro, but the Fifth Circuit reversed. *Id.* The Supreme Court framed the question it was asked to resolve as "whether [Fidelity's] trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction." *Id.* at 462.

4

The Court ruled that the district court had jurisdiction. *Id.* at 465. It observed that, "[a]s early as 1808, this Court stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship." *Id.* (citing *Chappedelaine v. Dechenaux*, 8 U.S. (4 Cranch) 306, 308 (1808)). Fidelity's trustees were no different. Much of the Court's opinion focused on the relative inability of the beneficial shareholders to control Fidelity, as compared to the trustees. *See id.* at 464–65 (differentiating the relative authority and powers of the trustees and beneficial shareholders). The trustees were the "real part[ies] to the controversy" for diversity jurisdiction purposes, the Court concluded, because they "possesse[d] certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464. Therefore, the Court concluded that the citizenship of the beneficial shareholders did not have to be taken into account to ascertain diversity jurisdiction.

B. *Carden v. Arkoma Associates*

The Supreme Court reexamined *Navarro* when it addressed the citizenship of limited partnerships in *Carden*. Arkoma Associates ("Arkoma"), a limited partnership organized in Arizona, brought suit against two Louisiana citizens for breach of contract in federal district court in Texas. *Carden*, 494 U.S. at 186. Arkoma's general partners were diverse from the defendants, but the firm had a limited partner with Louisiana citizenship. *Id.* Both the district court and the Fifth Circuit rejected the defendants' arguments that complete diversity was absent, and chose to measure diversity by reference only to Arkoma's general partners. *Id.* at 186–87.

The Supreme Court reversed the Fifth Circuit. It began by noting its "admirable consistency" in holding that unincorporated, artificial entities were not "citizens" of a particular state for purposes of diversity analysis. *Id.* at 189. The respondents asserted

5

that there were two exceptions to this rule,³ one of which was *Navarro*. To distinguish *Navarro*, the Court explained that the case had "nothing to do" with the citizenship of the business trust itself. *Id.* at 191. It merely settled whether trustees of a business trust who bring suit in their own name were "'active trustees whose control over the assets held in their names is real and substantial,' thereby bringing them under the rule, 'more than 150 years' old, which permits such trustees 'to sue in their own right, without regard to the citizenship of the trust beneficiaries.'" *Id.* at 191 (quoting *Navarro*, 446 U.S. at 465–66).

Similarly, the Court rejected the notion that *Navarro* stood for the proposition "that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Id.* at 192. The dissenting justices and the respondents argued that *Navarro* utilized a "real party in interest" test to determine a business trust's citizenship for diversity jurisdiction purposes. The Court's majority disagreed, emphasizing repeatedly that *Navarro* did not speak to the citizenship of an unincorporated organization when it brought suit in its own name. *Id.* at 192 ("*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names."); *id.* at 194 ("[*Navarro*] is irrelevant, since it involved not a juridical person but the distinctive common-law institution of trustees.").

The Court concluded that the citizenship of Arkoma was the citizenship of all of its partners, general and limited. *Id.* at 195. It ended the opinion by acknowledging that its rule effectively denied federal court access to large limited partnerships, despite their "functional similarity" to other organizations that had such access. *Id.* at 196–197. But

---

³ The other exception was *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933). The Court held in *Russell & Co.* that an artificial, unincorporated entity which only exists under Puerto Rican law — the *sociedad en comandita* — could be treated as a Puerto Rican citizen for diversity jurisdiction purposes, regardless of the citizenship of its members. That case is not relevant to the question presented in this motion.

these practical consequences did not sway the Court. It observed that "the course we take today does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives." *Id.* at 197. Therefore, under *Carden*, exceptions to the "every member" rule for determining diversity jurisdiction are to be created by Congress, and not the courts.

III.  Application of *Navarro* and *Carden* by the Lower Courts

While both *Navarro* and *Carden* discuss business trusts and diversity jurisdiction, neither case squarely addresses the citizenship of a business trust when it is sued or brings suit in its own name. The post-*Navarro* and *Carden* decisions by lower courts that speak to this issue fall into three categories. The majority of circuits hold that the citizenship of a trust is determined by reference to the trustees only. But the Eleventh Circuit found that citizenship of the trust was measured by the citizenship of the trust's beneficiaries. Meanwhile, the Third Circuit holds that the citizenship of both the trustees *and* the beneficiaries must be accounted for in assessing jurisdiction. The Court will describe and evaluate each approach. It concludes that the Third Circuit's approach is the best synthesis of the Court's holdings in *Navarro* and *Carden*. Adopting the "trustees and beneficiaries" approach results in the dismissal of this case for want of jurisdiction.

A.  The "Trustees Only" Approach

The Second, Fifth, Seventh, and Ninth Circuits take the approach EMCC advocates here. The Sixth Circuit chose a similar tack in an unpublished opinion. *Homfeld II*, 53 F. App'x at 732 ("[A] business trust has the citizenship of its trustees."). But these cases do

little more than assert the rule and provide a citation to *Navarro*.[4] None of them address the significance of the distinction between the citizenship of the trustees individually, and the citizenship of the trust itself. Nor do they confront what *Carden* had to say about *Navarro*.

EMCC posits that *Carden* was a case about limited partnerships, not business trusts, and that its comments about *Navarro* are dicta. While there is no definitive boundary between holdings and dicta, the best articulation of that boundary is "that the holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome." *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005) (Posner, J.) (citing Henry J. Friendly, *In Praise of* Erie — *and of the New Federal Common Law*, 39 N.Y.U. L. Rev. 383, 385–86 (1964)). As one of only two cases that contradicted a long, consistent line of decisions on unincorporated groups, it was arguably "essential" to *Carden*'s outcome that *Navarro* was distinguishable. Indeed, the dissent in *Carden* argued that their "general partners only" approach to the citizenship of limited partnerships followed logically from *Navarro*. *Carden*, 494 U.S. at 204–05 (O'Connor, J., dissenting) (taking the majority to task for its narrow reading of *Navarro*). But even if *Carden*'s discussion of *Navarro* was dicta, this Court is not in a position to ignore it. *ACLU of Ky. v. McCreary Cnty.*, 507 F.3d 439, 447 (6th Cir. 2010) ("Lower courts are 'obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as

---

[4] *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 901 (7th Cir. 2010) (Easterbrook, J.) ("[A] trust's citizenship is that of the trustee, rather than the beneficiaries, for the purpose of 28 U.S.C. § 1332(a)."); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 n.6 (5th Cir. 2009) (citing to *Navarro* for proposition that "citizenship of a trust is that of its trustee"); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees."); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) ("[T]he Supreme Court has deemed the citizenship of the trustees to be determinative [for diversity purposes].").

age or subsequent statements undermining its rationale.'" (quoting *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002))).

The Court rejects the majority approach. *Navarro* did *not* hold that "a business trust had the citizenship of its trustees."[5] If that is not evident from the opinion itself, *Carden* removed any confusion on the point. Of course, *Carden* gives no express opinion on the citizenship of business trusts, but it explicitly rejects EMCC's reading of *Navarro*, and forcefully suggests they are to be treated like any other unincorporated entity for diversity jurisdiction purposes. *Carden*, 494 U.S. at 196–97 (grouping business trusts among those "artificial entities other than corporations" for which Congress has not altered the diversity citizenship rules). Absent a binding Sixth Circuit proclamation to the contrary, this Court should not follow the unpersuasive interpretation of *Navarro* adopted by the majority of circuits.[6]

B. The "Beneficiaries Only" Approach

The Eleventh Circuit looks only to the citizenship of the "members," or beneficiaries, of the trust when determining citizenship. *Riley*, 292 F.3d 1337–40. This approach is "not inconsistent with *Carden*," but it is also not optimal. *Emerald*, 492 F.3d at 202, 205–06. First, it suffers from the same flaw as the "trustees only" approach because it makes

---

[5] Indeed, Justice Blackmun criticized the majority opinion in *Navarro* because it failed to answer this question for the lower courts. *Navarro*, 446 U.S. at 466 (Blackmun, J., dissenting) ("I had thought that we granted certiorari to resolve a significant conflict among the Courts of Appeals concerning the question whether the citizenship of a business trust, for purposes of establishing diversity jurisdiction, is determined by looking to the citizenship of its trustees or that of its beneficial shareholders.").

[6] EMCC also directs the Court to *Gen. Ret. Sys. of the City of Detroit v. UBS, AG* [hereinafter *UBS*], No. 10-cv-13920, 2010 WL 5296957 (E.D. Mich. Dec. 20, 2010). The *UBS* opinion thoroughly describes the competing approaches to this question presented here, but adopts the majority rule without explaining why it is more persuasive. It also ignores *Carden*. The Court is not bound to follow this decision, and will not do so here.

distinctions between different members of the business trust relevant for jurisdictional purposes, an approach the Supreme Court disfavors. *Carden*, 494 U.S. at 192 (deeming reality that certain members of different unincorporated entities "exercised greater control over their respective entities than other members" "played no part in our decisions"); *Emerald*, 492 F.3d at 202 ("[I]n many cases the beneficiary-only rule may lead to an untoward result, as for example, would be the situation if a trust in which the beneficiary has delegated all control of the trust to the trustee that brings the action."). Second, because real or perceived local bias will more likely be based on the "identification of the trustee," it would undermine the rationale of diversity jurisdiction to not account for trustees in the citizenship determination. *Emerald*, 492 F.3d at 202. Therefore, the Court will reject this approach as well.

### C. The "Beneficiaries and Trustees" Approach

The Third Circuit's opinion in *Emerald* is the best-reasoned decision on the citizenship of a business trust for diversity purposes. In *Emerald*, the plaintiff business trust had a sole beneficiary in the British Virgin Islands, and a sole trustee who was a citizen of Florida. *Emerald*, 492 F.3d at 198. One of the defendants was a limited partnership with a member who was a Florida citizen. *Id.* at 207. The district court found that it had jurisdiction, and entered a judgment for the business trust on its breach of contract claims. *Id.* at 197. The defendants raised the jurisdictional issue again on appeal. After carefully explaining the Supreme Court's decisions in *Navarro* and *Carden*, and discussing the qualities of the various approaches to this problem, the *Emerald* court concluded that the best approach was "to look to the citizenship of both the trustee and the beneficiary in all cases in which a trust is a party." *Id.* at 203.

The Third Circuit gave several reasons for reaching this conclusion. First, the rule "does not contradict the Supreme Court precedent in *Navarro* and *Carden*." *Id.* Second, it "obviates the possibility of an illogical outcome under a trustee or beneficiary-only approach in a case in which the trustee controls the trust and the beneficiary is merely passive, or vice versa." *Id.* at 203–04. Third, the rule is easy to apply. *Id.* at 204. Fourth, the rule "best accommodates our 'concerns of judicial economy and of due respect for the principles of federalism' when 'matters of diversity jurisdiction are implicated.'" *Id.* (quoting *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977)). Finally, as compared to a "beneficiaries only" rule, a rule that deems trustees "members" of the trust "recogni[zes] . . . that a trustee is more than a mere manager of a trust inasmuch as title to a trust's assets is fragmented with its legal title being vested in the trustee and its equitable title being vested in the beneficiary." *Id.* at 205–06.

The Court finds these rationales persuasive, and would add one more to the list. As the majority in *Carden* observed, the Supreme Court's jurisprudence in this area "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." *Carden*, 494 U.S. at 196. This has been so not because the federal courts are hidebound, but because such questions are "more readily resolved by legislative prescription than by legal reasoning." *Id.* at 197. The Court's decision here follows in that manner.

## CONCLUSION AND ORDER

Both the Wells Fargo fund and EMCC are citizens of Iowa for purposes of determining diversity jurisdiction. As such, complete diversity is lacking in this case, and EMCC has not pled a case over which this Court has jurisdiction.

WHEREFORE, it is hereby **ORDERED** that the Fund Defendants' motion to dismiss for lack of subject matter jurisdiction (docket no. 10) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 2, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 2, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager

12